FARMER, Judge,
dissenting in part.
I cannot agree with my colleagues’ decision to affirm one of the convictions. The jury’s finding of guilt on the sexual battery charge was tainted by the trial court unduly restricting cross-examination of a key state witness and by the failure to exclude hearsay testimony regarding the event. I would therefore reverse the conviction for sexual battery and remand for a new trial.
Carter was charged by information with familial sexual battery in violation of section 794.041, Florida Statutes (1991), and with a lewd and lascivious act in the presence of a child under 16 years of age in violation of section 800.04. Specifically, Count I of the information alleged that Carter had intercourse with his fourteen-year old daughter on November 4, 1989. Count II alleged that Carter had intercourse with his wife in the presence of their daughter on November 5, 1989. These allegations were first raised during a conversation between the daughter and her seventh-grade teacher.
At trial, the daughter testified that Carter forced her to have intercourse with him on numerous occasions, most recently at Carter’s place of employment. She also testified that he forced her mother to have sex with him as she watched.[3] Carter, on the other hand, maintains that both charges were concocted by his wife and were supported by their daughter under threat of harm, in order to put him in jail and out of Mrs. Carter’s life. Carter’s brother and sister-in-law testified in fact that the wife admitted as much to them.
During cross-examination of the daughter/victim, Carter’s lawyer tried to show this concoction by establishing that the alleged victim could not place any time frame on any of the charges alleged in the information. The record shows the following:
Q: Now you just talked about two things that is [sic] supposed to have happened to you on consecutive days — one thing at Farrell’s Dairy and one back at your house.
A: Yes, sir.
Q: Now can you tell me when those happened? The date those happened?
A: No, I don’t remember.
* * * * * *
Q: And you remember talking to Mrs. Miller [teacher who first reported the incidents] but you don’t remember when that happened, do you?
A: It wasn’t that far back.
* 5⅜ * * * *
Q: Would it have been May of 1990 when you talked to Mrs. Miller?
*678 A: I don’t know what date.
Counsel then asked whether it occurred six months ago or one year ago. This drew the state’s first “asked and answered” objection, which was sustained. Counsel for Carter then asked: “And you don’t know how long it was between these two things that is supposed to have happened and when you talked with Ms. Miller, do you?” This question drew another, similar objection, which was again sustained by the court.
The record conclusively shows that these questions had not been previously “asked and answered.” The questions concerning the gap in time between the two events differed from the prior questions covering the dates of the same events. In other words, the answer sought could reasonably have led to impeaching evidence. While the solicitude shown by the court for the interests of the victim during the rigors of cross-examination was understandable, the right to confront one’s accusers is no less applicable in the appalling circumstances of a sexual battery case against a child victim.
We have repeatedly held that the defendant must be given a wide latitude in the cross-examination of a key state witness. E.g., Caton v. State, 597 So.2d 412 (Fla. 4th DCA1992); Auchmuty v. State, 594 So.2d 859 (Fla. 4th DCA1992); Phillips v. State, 572 So.2d 16 (Fla. 4th DCA1990). The breadth of the scope of the cross-examination of such witnesses is necessarily implicated by the fundamental right in a criminal case to confront adverse witnesses. Art. I, § 16(a), Fla. Const. (1968).
In this instance, we have no way of knowing what answer the excluded question would have elicited, or what follow-up questions would have then been propounded, or what the answers, in turn, to those follow-up questions would have been. In short, we cannot anticipate what a full cross-examination would have yielded. I can only say that, for me, it is precisely the unknown that taints the jury’s result.
No disapprobation can be attached to counsel’s attempt to explore the full extent of the witness’s knowledge of the substance of her testimony through searching examination. We should not assume that counsel enjoyed subjecting this child, one apparently cheated by both family circumstance and mental acuity, to possible emotional injury, ridicule or embarrassment. Rather, we must acknowledge that counsel was simply carrying out his role as the defender of the accused in the way the law and evidence led him. In writing of the value the law places on an attorney’s thorough exploitation of the evidence, Judge Robert P. Smith, Jr. once praised lawyers:
for whom no fact exists if it cannot be proven, who doubt the easy assumption and the merely plausible witness, who exhaust all hypotheses and themselves in tracking the evidence. Such craftsmanship in advocacy is the pride of our judicial system.
State ex rel. Gentry v. Fitzpatrick, 327 So.2d 46, 47 (Fla. 1st DCA 1976).
Compounding this restriction on cross-examination was the admission of hearsay testimony through another key state witness, the defendant’s wife. It occurred as follows:
Q. Now, do you recall November the 6th of 1989 is [sic-as?] the date your husband was arrested? What was he arrested for?
A. Sexual molesting my daughter. Physical and mental abuse of my son; physical, mental and sexual abuse of me.
Q. Okay.
MR. JENNINGS: Your Honor, I will object to that. I want that struck from the record and the jury instructed not to regard it. He is not charged with these crimes.
THE COURT: The objection will be granted as to the other charges that might have had something to do with the son, Sam, or with Mrs. Carter. You are instructed to disregard that testimony as being relevant [sic-irrelevant?] to the charges in this matter. Okay, does that suit you, Mr. Jennings?
MR. JENNINGS: Fine.
Q. (By Mr. Young) Please listen to the question. We are not talking about anything that may have happened somewhere else, we are talking about being *679 arrested for something, charge with something.
A. Yes, sir.
Q. Specifically, Mr. Carter, your husband, being charged with having sex with your daughter, Abigail.
A. Yes, sir.
Q. All right, do you recall what I am talking about there?
A. Yes.
Q. And that particular event with reference to November the 6th, his date of arrest, do you remember when that occurred — when that occurred?
A. He was down to the dairy where he was working at.
Q. Would that have been, how many — a day or two or how long before the day he was arrested did that occur?
A. Two days before.
* * * * * *
Q. Okay. Now you said two days before he was arrested he; to your knowledge, had sex with her at Farrell’s Dairy; is that correct?
A. Yes, sir.
MR. JENNINGS: I object to that.
THE COURT: Wait a minute, wait till Mr. Jennings finishes his objection.
MR. JENNINGS: * * * In other words, you testified she said two days before that he had sex with Abigail. Is she saying she saw it or what?
MR. YOUNG: No, no.
THE COURT: (Indiscernible) the question.
Q. (By Mr. Young) My question is, Ms. Carter, I believe you testified that two days, to your knowledge, two days prior to your husband being arrested, he had sex with your daughter at the Farrell’s Dairy.
MR. JENNINGS: Well, how can she testify about that, Your Honor, I would object to that question.
THE COURT: She testified to it, Mr. Jennings, three or four questions ago.
MR. JENNINGS: How could she? How could she?
THE COURT: Mr. Jennings, she did and you did not object—
MR. JENNINGS: I did ob—
THE COURT: And how [sic-now?] it is overruled, [e.s.]
In spite of the court’s memory, the hearsay question had not been previously asked. What had been asked related to the date of the arrest. The objected question had the wife testifying about the sexual battery from an implied perspective of personal knowledge, thereby giving the assertion an aura of verisimilitude it otherwise lacked in the record. In this instance, it was especially devastating to the defense. The other charge related to the father forcing the wife to have sexual intercourse in the presence of the child. The objectionable question and answer implied that the father’s alleged sexual battery of the child also took place with the mother being present.
The importance of the testimony of the mother and daughter cannot be overstated. The entire case in chief for the state occupies a mere 122 pages of transcript. Other than the mother and daughter, the only other persons to testify were after-the-fact witnesses: an examining physician, her teacher and an HRS investigator. The teacher merely related that the child was withdrawn in class and that she had had a certain conversation with her in the early part of November 1986, no details of which were given. The doctor performed a physical examination of the child and found a vagina] opening and hymenal entrance consistent with repeated sexual intercourse, as well as a sexually transmitted disease present. When the defendant was tested for this same disease, the test results were negative. The mother, however, tested positive for this disease, and there was other testimony that she had previously engaged in prostitution.
I relate all this to show that the evidence was hardly one-sided. As these cases often do, the ultimate issue turned on the credibility of the principal witnesses. In the end, it was obviously the mother and daughter’s testimony against the husband’s. In my opinion, the combination of an undue restriction on cross-examination *680 and inadmissible hearsay together deprived Carter of a fair trial.
I have no quarrel with the reversal of the sentences based on Lettman v. State, 526 So.2d 207 (Fla. 4th DCA1988), rev. denied, 544 So.2d 1025 (Fla.1989), I find I must dissent, however, from the sexual battery conviction.